**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>  **Plaintiff,**<br><br>  **v.**<br><br>**JOSE FELIPE HERNANDEZ-CALVILLO<br>AND MAURO PAPALOTZI,**<br><br>  **Defendants.** | Case No. 16-20097-05/06 |

**MEMORANDUM & ORDER**

Defendants move for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Docs. 167 & 169). Because their arguments are the same, the court addresses their motions in a single order.

**I.     Background**

In August 2017, defendants were tried by a jury and convicted on Count 1: conspiracy, for commercial advantage or private financial gain, to induce and encourage aliens to reside in the United States, knowing and in reckless disregard of the fact that such residence is in violation of the law, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (v)(I). Defendants were charged in an indictment with being members of a conspiracy that used undocumented alien labor to reduce the cost of drywall construction projects to increase profits for the conspirators. The indictment alleged that through the conspiracy, defendants gained employment without having to purchase and provide workers' compensation, unemployment, and liability insurance to contractors, pay market wages, health insurance, taxes, or social security withholdings.

Defendants allegedly led crews that hung drywall and worked primarily, if not exclusively for the same contractor, Keith Countess. Countess paid crews by writing checks to Jose R. Torres Drywall. Jose R. Torres Drywall was not a drywall subcontractor. It was a scheme that enabled Countess and his

crew leaders to pay the drywall crews and that allowed Jose Torres a percentage of the money. Jose Torres deposited the checks, and then cashed them, withholding a percentage for himself and providing the rest to various drywall crews, including defendants'.

Defendants were acquitted on Counts 2, 7, and 8 in the indictment, which alleged that defendants encouraged or induced three specific unlawful aliens to reside in the United States. The three unlawful aliens listed in counts 2, 7, and 8 were: Jorge Rodriquez Martinez; Jose Esquivel-Torres; and Vicente Guerrero-Guerrero.

During deliberations, the jury asked three questions. The one relevant to these motions read: "Is it possible to get a different/further definition or clarification of 'intentionally induced or encouraged' as written in counts 2, 7, 8?" The court responded: "You should use your collective judgment and experience to decide the issues in this case."

Defendants argue: (1) that the court improperly instructed the jury, by failing to identify the unlawful aliens subject to Count I's conspiracy charge; (2) by declining to define the terms "induced" and "encouraged" when asked by the jury for further definitions of those terms; and (3) by allowing two cooperators, Jose Torres-Garcia and Marcos Stubbs, to give opinion testimony over defendants' objection that defendants were unlawful aliens because they used Jose Torres-Garcia's check cashing service and insurance certificates.

**II.   Legal Standard**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A motion for new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). Whether to grant a new trial is usually left to the trial court's discretion and is reviewed for

abuse of discretion. *Id.* at 1270 (noting that a decision is found to be an "abuse of discretion only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quoting *United States v. Combs*, 267 F.3d 1167, 1176 (10th Cir. 2001))).

### III.  Discussion

#### A. Whether the court improperly instructed the jury, by failing to identify the unlawful aliens subject to Count I's conspiracy charge

Defendants first argue that the court erred by deciding not to list in Count I the specific undocumented aliens that were allegedly induced or encouraged to remain in the United States unlawfully. At the pre-charge conference, the court decided not to include the names of the three undocumented aliens: Jorge Rodriquez Martinez; Jose Esquivel-Torres; and Vicente Guerrero-Guerrero in Count I, the conspiracy count. Defendants argue that leaving the three named individuals out of the conspiracy instruction confused the jury members and allowed them to "engage in a fishing expedition" or "roaming commission" to find defendants "guilty of conspiring to encourage or induce any illegal aliens, including [their] own crew members, to reside in the United States." (Docs. 167 & 169, at 2.)

When the court's jury instructions are challenged on a motion for new trial, the court reviews the instructions as a whole, to determine whether the jury was likely misled. *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994). The court will only overturn a jury verdict if there is "substantial doubt that the jury was fairly guided" by the instructions given. *Id.* (quoting *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993)).

Throughout trial, the jury heard evidence that unlawful aliens were induced or encouraged to remain in the United States unlawfully. During closing arguments, the government explained to the jury that Jorge Rodriquez Martinez; Jose Esquivel-Torres; and Vicente Guerrero-Guerrero were the only unlawful aliens subject to Count I, the conspiracy charge. The jury did not need to determine that

defendants were guilty of the substantive counts, which alleged that defendants intentionally induced or encouraged each individual alien to reside in the United States for defendants' commercial advantage or private financial gain, knowing or in reckless disregard of the fact that doing so violated the law, to find that defendants were guilty of Count I, the conspiracy charge. Evidently, that is what the jury determined. The court finds that read in their entirety, the jury instructions fairly guided, and the jury was not likely misled by the court's decision not to list Jorge Rodriquez Martinez; Jose Esquivel-Torres; and Vicente Guerrero-Guerrero in the conspiracy count.

Defendants' motion for new trial based on the court's decision not to list the individual aliens in Count I is denied.

### B. Whether the court erred by declining to define the terms "induced" and "encouraged" for the jury

At the pre-charge conference, defendants requested that a jury instruction defining "induced" and "encouraged" be included in the jury instructions. They based this request on *United States v. He*, 245 F.3d 954 (7th Cir. 2001). The court decided that defining the terms "induced" and "encouraged" was unnecessary, because the jury members could use their collective experience to give the words their ordinary meaning. The court did not include defendants' proposed instruction. During deliberations, the jury asked for a further definition of those terms in the context of Counts 2, 7, and 8. The court instructed the jury members to use their collective judgment and experience to decide the issues in the case. The jury acquitted defendants on Counts 2, 7, 8. Defendants still seek a new trial based on the court's decision not to provide the definitions they suggested, based on the *He* case.

As an initial matter, it seems that defendants have no basis to challenge the court's response to the jury's question, as they were acquitted of Counts 2, 7, and 8, which were the subject of the question. But defendants suggest that the jury must have required further definition of "induced" and "encouraged"

because they were also contained in Count I. The court disagrees. The court found at the pre-charge conference, and in reviewing the jury's question, that it would be proper for the jury members to apply the ordinary meaning of the words "induce" and "encourage" using their collective judgment and experience.

The court reviewed the *He* case when defendants initially brought it to the court's attention at the pre-charge conference. In *He*, the Seventh Circuit affirmed a district court's decision to give a jury the Black's Law Dictionary definitions of "induce" and "encourage" in response to the jury's statement that "We need a better definition of encouraged or induced. Does this differ from aiding and abetting?" The court did not find that providing the jury with a definition of these terms was necessary at the pre-charge conference, or in response to the jury's question. There is no Tenth Circuit Pattern Instruction defining the terms. In fact, the instructions use the word "induce" to define other terms. For example, Tenth Circuit Pattern Instruction 2.37 defines "extort" as "to wrongfully induce someone else to pay money or something of value by threatening a kidnapping or injury if such payment is not made." Criminal Pattern Jury Instructions (Feb. 2018). The terms "induce" and "encourage" are not defined in the instructions.

Defendants' motion for new trial based on the court's decision not to give the jury definitions of "induce" and "encourage" is denied.

### C. Whether the court improperly overruled defendants' objection and allowed opinion testimony that defendants were unlawful aliens because they used Jose Torres-Garcia's check cashing service and insurance certificates

Defendants argue that the court erred by allowing Jose Torres-Garcia and Marcos Stubbs to offer opinion testimony pursuant to Federal Rule of Evidence 701. Defendants argue that Torres-Garcia's and Stubbs's testimony—that defendants were unlawful aliens because they used Jose Torres-Garcia's check

cashing service and insurance certificates—constituted expert testimony and should have been excluded for lack of foundation.

Fed. R. of Evid. 701 requires lay witness testimony to be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." *United States v. Brown*, 654 F. App'x 896, 902 (10th Cir. 2016).

Stubbs testified first at trial. He explained the logistics of Torres-Garcia's check-cashing scheme. He mentioned that a relative introduced Stubbs to Torres-Garcia and that Stubbs eventually helped Torres-Garcia form a check-cashing business called Jose Torres Drywall. He testified that Jose Torres Drywall was not a drywall business—only a check-cashing business. Stubbs testified that he helped Torres-Garcia open bank accounts, get liability insurance, a bank loan, and that he loaned Torres-Garcia some money to get started—something under $1,000. He testified that they bought liability insurance to provide to the drywall crews, because they needed it to hire employees. Torres-Garcia worked out of Stubbs's relative's Boost Mobile pre-paid phone store.

Stubbs testified that he was brought to the United States as a child, initially illegally, and that he spent years traveling back and forth. He went through naturalization and became a United States citizen in 1995. He has over thirty years in the drywall hanging and finishing industry. He testified that when he became a citizen, he could get a driver's license, open bank accounts, purchase liability insurance, and generally had the rights of a normal American. Before he was granted citizenship, Stubbs testified that he worked hanging drywall, and that someone else had to cash his checks for him because he did not have an identification card. This personal experience taught him that there was a market for check-cashing services and how they operated. Based on Stubbs's personal experience trying to do drywall work in the United States as an unlawful alien, he helped Torres-Garcia start his check-cashing business.

-6-

Torres-Garcia testified that he was born in Mexico and has work authorization from the United States making him a lawful permanent resident. He also testified that Stubbs helped him set up Jose Torres Drywall by going to the bank, and loaning him money to purchase liability and workers' compensation insurance. He testified that he provided insurance certificates to the clients who came to get their checks cashed. He testified that his business cashed checks for individuals who did not work for him.

When asked why customers had their checks written to Jose Torres Drywall when they didn't work for him, he responded that the contractor his clients worked for would ask him for proof of insurance, and then would write him the checks for the work. A client would bring him a check to cash one day, he would go to the bank, deposit it, then withdraw the cash, communicate with the client to let them know the money was available, take five percent for himself, and then give the rest of the cash to his clients, usually the next day. He explained that he charged five percent because his clients could not cash the checks themselves. He had somewhere between five and eight clients a week and the amounts of checks varied between $2,000–10,000.

When asked whether Torres-Garcia ever asked his clients whether they were present in the country legally, he responded that he had not, but that was why the contractors would ask him for insurance, because the workers did not have papers. He said he knew most of his clients were here illegally and that was why he could charge them five percent to cash their checks. Torres-Garcia identified both defendants as customers who brought him checks to have them cashed. He never met the contractors, like Countess. He worked exclusively with the workers, like defendants.

Defendants filed a motion in limine, asking the court to exclude Torres-Garcia's planned testimony that "all of the drywall workers that were members of crews for which he cashed checks were illegal aliens." (Doc. 111 at 1.) The court denied the motion without prejudice to contemporary

objection at trial. Defendants contemporaneously objected to both Torres-Garcia's and Stubbs's testimony at trial for lack of foundation. The court required additional foundation but eventually allowed the testimony.

The court finds that Torres-Garcia's and Stubbs's testimony was based on their personal knowledge, experiences, and perceptions of workers in the drywall industry. It was this knowledge that prompted them to start a check-cashing service that would bypass bank requirements for official identification. Their testimony was necessary to explain to the jury the need for the check-cashing business and how it operated. Their testimony was not based on scientific, technical, or other specialized knowledge. To the extent that Torres-Garcia and Stubbs had specialized knowledge, it was based on their observations and their personal knowledge and experience working with their clients. They did not refer to reports or otherwise reference scientific or professional materials. The testimony was properly admitted as opinion testimony under Fed. R. Evid. 701.

Defendants' motions for new trial based on the court's admission of Torres-Garcia's and Stubbs's testimony as lay opinion testimony is denied.

**IT IS THEREFORE ORDERED** that defendants' motions for new trial (Docs. 167 and 169) are denied.

Dated March 9, 2018, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**